ELIZABETH C. B. MILLER *vs.* LEVI LINCOLN & others.

A mortgagee in possession of real estate, for the purpose of foreclosure, is accountable for the rent thereof during the time for which he suffers a notoriously insolvent tenant to remain in possession, deducting the time reasonably necessary to expel him by legal means, and to obtain a responsible tenant.

On a bill in equity, brought without any previous tender, to redeem land from a mortgage, the mortgagee, if he has not prevented the performance of the condition by the mortgagor, is entitled to his costs.

On a bill in equity to redeem land from a mortgage, if the mortgagee and an assignee of the mortgage are made parties and file separate answers they are each entitled to tax for an answer, but for only one bill of costs subsequently accruing.

MERRICK, J. This is a bill in equity to redeem land from a mortgage. The premises described in the plaintiff's bill are subject to two subsisting mortgages. The plaintiff is the assignee of the second, which was made by Isaac R. Barbour to Seth P. Miller. The first was made by Adolphus Morse to Elizabeth Waldo, who, for breach of the mortgage and to foreclose the right of redemption, took possession of the premises, and held them until her death; and they are now held by the Theological Institute of Connecticut, by virtue of a deed of assignment from her executors. Before the expiration of three years from the time when Elizabeth Waldo took possession of the estate under the mortgage to her, the plaintiff commenced this suit. From this statement of the title of the several parties, the right of the plaintiff to redeem the premises is apparent; and it is not doubted or questioned by the defendants.

The controversy between the parties arises upon the master's report, in relation merely to the sum to be paid by the plaintiff to entitle her to redeem. The rents and income of the estate, from the time when it was taken possession of by Miss Waldo to the time when the mortgage was assigned by her executors to the Theological Institute, have been fully and satisfactorily accounted for. But the latter have rendered no account, and given no credit for any rent or income from the 1st of October 1851 to the 1st of April 1853. They contend that they were not liable, and are under no obligation to render any account, or allow any credit for income from the estate, for the period intervening between those dates, because their suit against Barbour proved to be fruitless, and they have in fact realized no income.

But this failure is insufficient, in view of the facts reported by the master, to relieve them from their liability to account for the profits of the estate. The rule of law upon this subject is perfectly clear. It is correctly stated by Chancellor Kent. He says that a mortgagee, by taking possession for the purpose of foreclosure, imposes upon himself the duty of a provident owner and is bound to recover where such an owner would, with reasonable diligence, have recovered. 4 Kent Com. (6th ed.) 166

47 *

Now it appears that Barbour, whom the Theological Institute found in possession of the estate when the mortgage was assigned to them, was notoriously insolvent, and continued to be so for the whole eighteen months during which they suffered him to remain their tenant. This long tolerance of a tenant so irresponsible evinces nothing of the vigilance of a careful and prudent proprietor. It was reckless, and sure to result in ultimate loss. It was unnecessary, and therefore unjust to parties subsequent in interest, who had a right to insist that the profits of the estate should be applied, as far as they could be realized by the exercise of timely attention and judicious supervision, to the reduction of the debt, for the payment of which it was held as collateral security.

The account rendered by the Theological Institute, and reported by the master, is therefore to be corrected by adding to the credits rent, at the rate of two hundred dollars a year, which the parties have agreed to be fair, if the defendants are legally chargeable for it, for such portion of the eighteen months, between October 1st 1851 and April 1st 1853, as by the use of due care they might have obtained it. A reasonable time is to be allowed to the defendants, within which they might, by legal means, have expelled Barbour from the premises; to which is to be added such further reasonable time as would have enabled them to lease the estate to a responsible tenant. These deductions being made, for the period which remains the rent is to be accounted for. If the parties are unable to agree upon how much time those deductions should embrace, the case must be referred to a master to fix and determine it.

The account of the defendants having been first corrected, upon the principles already stated, a decree will be entered, under which the plaintiff will be allowed to redeem, upon payment of the balance found due. But as the plaintiff made no tender previously to the commencement of her bill, and as it is not shown that the defendants have ever interposed any impediment by which she was prevented from performing, or tendering performance of the condition of the mortgage, costs upon entering up the decree are to be taxed in their behalf.

The executors of Miss Waldo and the Theological Institute made separate answers, for which each of them is entitled to the usual fee.   But as there was, in no other respect, more than one defence made, a single bill of costs only as to all other items is to be taxed.   It should be added also, that there now appearing to be no occasion for the further prosecution of the bill against the executors, it should, as against them, be dismissed; for otherwise they might hereafter become entitled to costs, accruing subsequently to the present time.   *Ordered accordingly.*

*W. R. Hooper*, for the plaintiff.

*R. Newton*, for the defendants.